UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 12-10656-RWZ


TROY SUTLER

v.

REDLAND INSURANCE COMPANY
and BUDGET INSTALLMENT CORP.

MEMORANDUM OF DECISION

July 12, 2013


ZOBEL, D.J.

Plaintiff Troy Sutler has sued defendants Redland Insurance Company

("Redland") and Budget Installment Corp. ("BIC") in an ongoing attempt to obtain

compensation for injuries he suffered when hit by a forklift in 2007. He now moves for

summary judgment on one of his claims against Redland and seeks a default judgment

against BIC. Redland has also moved for summary judgment.

I.      Background

On August 13, 2007, Sutler was hit in the back by a forklift carrying a 350-pound

equipment box. He suffered serious injuries. The forklift was driven by Billy McDonald,

an employee of New York Crew Power, Inc. ("NYCP"). Sutler sued NYCP in Plymouth

Superior Court and obtained a default judgment in the amount of $79,435.96.[1] Sutler

attempted to execute that judgment but was unable to do so.

---

[1] Redland disputes the validity of the default judgment in part because Sutler sued NYCP under
the incorrect name "New York Power Crew, Inc."

In March 2007, before Sutler was injured, NYCP had bought a year-long insurance policy from Redland to cover general commercial liabilities. It paid for that insurance policy with a loan from BIC. Under their financing agreement, BIC loaned NYCP $6,000 to purchase the insurance policy from Redland; NYCP then agreed to pay BIC back with nine monthly payments of $695.89. The agreement specified that as long as NYCP owed BIC any money, BIC would have a power of attorney to cancel the Redland insurance policy on NYCP's behalf. By cancelling the policy, BIC could obtain a partial refund from Redland.[2]

In May 2007, just two months after taking out the policy, NYCP failed to make its monthly payment to BIC. BIC responded on May 8 by sending NYCP a notice of its intent to cancel NYCP's insurance policy with Redland. That notice of intent to cancel stated that BIC would cancel the policy on May 22 unless NYCP paid BIC the amount due before that date.[3]

NYCP did not pay BIC the amount due. On May 22, BIC sent a notice of cancellation to NYCP, to NYCP's insurance agent, and to Redland. The notice indicated that the cancellation would become effective on May 29.

On June 22, Redland sent NYCP a separate notice stating that its insurance had been cancelled effective May 29. That notice stated that NYCP could avoid the cancellation by paying the total premium due, $5,606.91, within fifteen days. NYCP

---

[2] Redland has submitted a copy of the financing agreement as an exhibit to its statement of undisputed material facts. See Docket # 19, Ex. D. I address Sutler's evidentiary objections to this exhibit below.

[3] Sutler points out that the record does not include a copy of this notice of intent to cancel. That objection is addressed below.

apparently did not do so.

On September 17, after Sutler was injured, BIC informed Redland that it had received payment from NYCP. It asked Redland to retroactively reinstate NYCP's insurance from May 29, 2007, onwards "without lapse." Docket # 19, Ex. K. Redland apparently refused to reinstate the policy.

Sutler filed suit against Redland and BIC in early 2012. As to Redland, he claims it is liable as NYCP's insurer for the judgment that he obtained against NYCP. He also claims Redland has violated Mass. Gen. Laws ch. 93A and ch. 176D by refusing to admit liability. As to BIC, he claims that it caused him damages by improperly cancelling the insurance policy.

## II.   Legal Standard

Summary judgment will be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court must view the record in the light most favorable to the nonmovant and draw all justifiable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If the evidence presented would allow a reasonable jury to return a verdict for the nonmovant, summary judgment must be denied. Id. at 248. Where the parties cross-move for summary judgment, the court applies the same standard to each motion. See Atl. Fish Spotters Ass'n v. Evans, 321 F.3d 220, 224 (1st Cir. 2003).

## III.   Analysis

### A.     Redland

Sutler moves for summary judgment on his first claim against Redland on the

ground that NYCP's insurance policy was never validly cancelled. He raises two main arguments. First, he claims that BIC was not authorized to cancel NYCP's policy. Second, he claims that the cancellation was invalid because NYCP did not receive notice at least ten days before its policy was cancelled.

As to the first argument: Redland has submitted the finance agreement between NYCP and BIC, which explicitly grants BIC a power of attorney to cancel "any/all policies financed by" BIC's loan for as long as NYCP owes BIC money. Docket # 19, Ex. D, at 1. Sutler does not dispute that the Redland policy was financed by BIC's loan, or that NYCP owed BIC money when BIC exercised its power of attorney. He only contests the admissibility of the finance agreement, claiming that it is hearsay and not authenticated. Those objections are meritless. A contract is a verbal act, not an assertion of fact. It therefore does not constitute hearsay. See Fed. R. Evid. 801(a), (c)(2); see also 2 McCormick on Evidence § 249 (7th ed. West 2013) ("When a suit is brought for breach of a written contract, no one would think to object that a writing offered as evidence of the contract is hearsay."). As for authentication, the document is vouched for by the affidavit of Diane Meagher, a former vice president of BIC. See Docket # 19, Ex. C, ¶ 3.[4] That is clearly sufficient, especially in conjunction with the document's distinctive properties. See Fed. R. Evid. 901(a); see also id. 901(b)(4), 902(9). And Sutler has produced no contrary evidence indicating in any way that the document is not genuine.[4]

---

[4] I do not credit Sutler's unsupported assertion that Meagher lacks sufficient personal knowledge to certify that the document submitted is a true and correct copy of the contract.

[4] Contrary to Sutler's apparent belief, no further affidavit from NYCP or its insurance agent is required to show that NYCP granted BIC a power of attorney to cancel its insurance policy. The contract demonstrates that fact on its face.

As to Sutler's second argument regarding the notice provided NYCP: Sutler argues that under the insurance policy's terms, Redland was required to give fifteen days' notice before it could cancel the policy for nonpayment of premium. See Docket # 19, Ex. B, at 54-55 (provisions of the insurance policy's New York endorsement). But as described above, Redland did not cancel the policy; BIC cancelled the policy under its power of attorney for NYCP. The contract allows NYCP to cancel the policy upon "advance written notice." Id. at 54. BIC could therefore cancel the policy upon the same terms.

Moreover, BIC's cancellation complied with the governing statute. Under New York law, which the parties agree applies, a premium finance agency (such as BIC) may only cancel an insurance contract if it first gives the insured party ten days' written notice. N.Y. Banking Law § 576(1)(a). It must also provide three days for mailing the notice. Id. Sutler argues that BIC's cancellation is ineffective because BIC sent the notice of cancellation on May 22, 2007, with an effective date of May 29, 2007—a gap of only seven days. But Sutler confuses the notice of intent to cancel with the notice of cancellation. BIC sent its notice of intent to cancel on May 8, 2007, fourteen days before it sent the notice of cancellation on May 22. That fourteen-day period satisfies the notice requirement of N.Y. Banking Law § 576(1)(a). BIC was then entitled to make the cancellation effective on any day after it sent the notice of cancellation. See id. § 576(1)(d) ("After the notice in paragraph (a) above has expired, the premium finance agency may thereafter, in the name of the insured, cancel such insurance contract by mailing to the insurer a notice of cancellation stating when thereafter the policy shall be cancelled

. . . .").

Sutler weakly protests that Redland has not submitted a copy of the notice of intent to cancel that was mailed by BIC on May 8, 2007. Instead, Redland has submitted a register maintained by BIC, which shows that such a notice was sent to NYCP on May 8, 2007, with a "Cancel Date" of May 22, 2007. Docket # 19, Ex. E. It has also submitted a certification that the notice of intent to cancel was in fact sent to NYCP and its insurance agent on May 8, 2007, by first class mail, in accordance with the register. Id., Ex. F. That is sufficient evidence to carry Redland's burden on this point; and Sutler has presented nothing to rebut that evidence.[5]

For the reasons given above, Sutler's motion for partial summary judgment must fail. And for the same reasons, Redland's motion for summary judgment succeeds. Even taking the record in the light most favorable to Sutler, he has produced no evidence to rebut Redland's showing that (1) BIC had authority to terminate the insurance policy; and (2) BIC in fact terminated it, in accordance with the policy's terms and New York law, before Sutler was injured.[6] As such, no reasonable jury could find that Redland is liable for Sutler's injury under the insurance policy it sold NYCP.

Because Redland was never liable on the policy, it did not violate Mass. Gen.

---

[5] Sutler has submitted a letter sent by BIC to Redland requesting that Redland reinstate NYCP's policy. However, it has presented no evidence to show that Redland actually did reinstate NYCP's policy. In other words, there is no evidence that the policy ever returned to force after it was cancelled.

[6] I therefore need not consider Redland's alternative argument that even if BIC did not properly terminate the policy on NYCP's behalf, Redland itself properly terminated the policy by its letter of June 22, 2007. That later termination would have become effective on July 7, 2007, well before Sutler was injured on August 13. I also need not decide whether Redland was relieved of its liability under the policy by NYCP's failure to notify it of the underlying suit, or whether Sutler's default judgment against NYCP is enforceable given that the judgment does not use NYCP's correct name.

6

Laws ch. 93A or ch. 176D by refusing to admit liability or make a good faith offer of settlement. Redland is therefore also entitled to summary judgment on Sutler's second claim.

### B.    BIC

Sutler's motion for partial summary judgment also seeks a default judgment against BIC for failing to respond to the complaint. This repeats Sutler's separate motion for a default judgment against BIC, which I previously denied.

Under 28 U.S.C. § 1448, the federal rules for service of process govern any service commenced after a case is removed to federal court. See Fed. R. Civ. P. 81(c)(1); Feliz v. MacNeill, 493 F. App'x 128, 131 (1st Cir. 2012). Removal was completed when notice was filed with the state court on May 7, 2012. However, Sutler did not attempt to serve BIC until July 16, 2012. At that point, he was required to serve BIC in accordance with Federal Rule of Civil Procedure 4, including the requirement that the summons served must "name the court and the parties." Fed. R. Civ. P. 4(a)(1)(A); see also id. 4(c)(1). BIC has submitted a copy of the summons, which clearly names the Plymouth Superior Court rather than this court. It therefore appears Sutler still has not served BIC in accordance with Rule 4, making a default judgment inappropriate.

I note that substantially more than 120 days have passed since the complaint was filed. If Sutler still wishes to proceed against BIC, he shall properly serve BIC within twenty days. Otherwise, his claim against BIC will be dismissed. See Fed. R. Civ. P. 4(m).

### IV.    Conclusion

Sutler's motion for partial summary judgment (Docket # 14) is DENIED. Redland's motion for summary judgment (Docket # 17) is ALLOWED.


    July 12, 2013                                /s/Rya W. Zobel

        DATE                                  RYA W. ZOBEL
                                      UNITED STATES DISTRICT JUDGE